HERMAN POSLEY *v.* STATE OF TENNESSEE.

(*Nashville,* December Term, 1955.)

Opinion filed March 9, 1956.

M. PERRY NOCHLIN and JOHN B. DOWNEY, both of Nashville, for plaintiff in error.

NAT TIPTON, Advocate General, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendant, Herman Posley, was convicted of robbery and sentenced to 5 years in the penitentiary.

It is insisted here that the trial judge was in error in permitting the State to cross-examine the defendant as to a previous charge of robbery.

The latitude allowed in this form of cross-examination was fully discussed in our case of *Zanone* v. *State,* 97 Tenn. 101, 110, 36 S. W. 711, 35 L. R. A. 556 and more recently discussed by Justice Burnett in *Brooks* v. *State,* 187 Tenn. 67, 75, 213 S. W. (2d) 7.

In *Zanone* v. *State,* supra [97 Tenn. 101, 36 S. W. 714], this Court said:

"In the case of Hill v. State, 91 Tenn. [521] 522, 19 S. W. 674 the defendant, when being cross-examined as a witness, was asked, and required to answer over objection, 'if he had not been charged with stealing money from a negro in Huntingdon, and if he did not pay him back the money.' Defendat answered he had been charged with the offense, and had paid the party some money to keep his father from hearing of the charge against him, but there was no truth in the charge. This court held (Judge Caldwell delivering the opinion) that, 'great as the latitude of cross-examination is, it does not warrant the investigation of mere personal imputations, which may be easily instigated and multiplied by unscrupulous persons, to the injury or destruction of any witness,' and that the witness' denial of the truth of the charge was conclusive, and should have ended that matter, to all intents and purposes; that the trial judge erred in permitting the question to be asked,

in the shape it was put, and in instructing the jury that they could look to it as affecting the credibility of the witness, after the truth of the charge had been denied by the witness. This was all that was settled in the Hill case. The questions propounded to the witnesses on cross-examination in the case at bar are altogether different from the question propounded in the Hill case. Here these witnesses were asked about specific acts, relating to their conduct, antecedents, and character, involving moral turpitude, for the purpose of affecting and injuring the credibility of the witnesses, and they were not inquiries about personal imputations or charges made against the witnesses. Our decisions hold: (1) That independent evidence introduced by the opposite party to impeach a witness must relate to general reputation, and that specific acts cannot be shown. Ford v. Ford, [26 Tenn.] 92; Gilliam v. State, [38 Tenn.] 38; Merriman v. State, [71 Tenn.] [393] 394. (2) But that on cross-examination of a witness, we think, specific acts, including indictments involving moral turpitude, may be asked about, which disclose his conduct, antecedents, and character, and thereby tend to affect and injure his credibility, although they may reflect upon and disgrace the witness, and the answers of the witness to such collateral matters are conclusive, and not to be contradicted. Franklin v. Franklin, 90 Tenn. 49, 16 S. W. 557; Rocco v. Parczyk [77 Tenn.] 331; Hill v. State, 91 Tenn. 521, 19 S. W. 674; Boyd v. State, 94 Tenn. 505, 29 S. W. 901; Braswell v. State, 3 Leg. Rep. 283; Clapp v. State, 94 Tenn. [186] 202, 30 S. W. 214; Hoard v. State, [83 Tenn.] 318, 323; Peck v. State, 86 Tenn. 259, 6 S. W. 389. It was considered admissible to show by

one witness that she was a lewd woman. Hoard v. State, [83 Tenn.] 323. And to ask a witness whether he had not committed forgeries, and was not addicted to the excessive use of morphine and whisky, was allowed. Franklin v. Franklin, 90 Tenn. [44] 49, 16 S. W. 557. And so whether the witness had not been indicted for an infamous crime. Hill v. State, 91 Tenn. [521] 523, 19 S. W. 674; Braswell v. State, 3 Leg. Rep. 283. And so whether he had been arrested for theft, or in prison or other charges, approved. Peck v. State, 86 Tenn. 259, 6 S. W. 389. There is this qualification to the rule: If the witness is asked as to any crime, he may claim his privilege from self-incrimination, and protect himself from a criminal prosecution by refusing to answer. Clapp v. State, 94 Tenn. [186] 202, 30 S. W. 214. Judge Snodgrass, in delivering the opinion of this court in the case of Boyd v. State, quotes approvingly from a New York decision the following language, to wit: 'The better rule now is that, upon cross-examination, questions as to specific acts tending to disgrace the witness, and not questions as to accusations or charges including indictments, may be asked on cross-examination, but the party asking them is bound by the answer of the witness.' 94 Tenn. 511, 29 S. W. 901. But the rule has not been definitely settled in Tennessee as to what extent questions of this character are allowed, except that, as to questions relating to indictments for offenses involving moral turpitude, the cases permit them to be asked about. Braswell v. State, 3 Leg. Rep. 283; Hill v. State [91 Tenn. 521, 19 S. W. 674]. The case at bar presents the question as to what scope should be allowed on the cross-examination of witnesses touching their character;

and, after a careful consideration of the question, we think it clear, upon the authority of our own decisions [and the decisions] in other states, and the best text writers, that the inquiry, on cross-examination, may go the extent of asking about any specific acts of the witness involving moral turpitude, and the witness may be compelled to answer the questions, unless the questions involve a criminal offense for which the witness may be prosecuted; and in that case the witness is permitted to judge, for the most part, for himself, and to refuse to answer wherever it would tend to subject the witness to criminal punishment or forfeiture. Here the court must see for itself, when the witness claims the privilege of not answering, that the answer will directly show his infamy or crime, before it will excuse him from testifying. If the offense inquired about is barred by the statute of limitations from criminal prosecution, then the witness could not claim the privilege of not answering. There is no good reason why a witness may not be asked on cross-examination questions touching his present situation, employment, and associates, if they are of his own choice; as for example, in what house or family he resides, what is his ordinary occupation, and whether he is intimately acquainted and conversant with certain persons, and the like. However, these may disgrace him, his position is one of his own selection. A witness, on cross-examinaton, may be asked any queston throwing light on his or her moral character, provided they involve moral turpitude, whether they relate to domestic relations or other habits, if the tendency is to show that the witness is guilty of wanton, habitual violation and disregard of the most

sacred marital relations, or of the law, or of the rules of decent society, involving the witness in moral turpitude; as, for example, if the witness has more than one living husband or more than one wife at the same time, or if the witness has been, or is then, employed in a house of ill fame. Mr. Greenleaf says: 'The examination being general, and kept within bounds by the discretion of the judge, all inquiries into transactions of remote date will, of course, be suppressed; for the interests of justice do not require that errors of any man's life, long since repented of, and forgiven by the community, should be recalled to remembrance, and their memory be perpetuated in judicial documents, at the pleasure of any future litigant. The state has a deep interest in the inducements to reformation held out by the protecting veil which is thus cast over the past offenses of the penitent. But where the inquiry relates to transactions comparatively recent, bearing directly upon the present character and moral principles of the witness, and therefore essential to the due estimation of the testimony by the jury, learned judges have of late been disposed to allow it.' 1 Greenl. Ev. (15th Ed.) § 459.''

In our recent case of *Brooks* v. *State*, 187 Tenn. 67, 75, at page 76, 213 S. W. (2d) 7, at page 11, the Court said:

''(10, 11) We have examined many cases on the subject from various jurisdictions. Some limit the cross examination to 'the sound discretion of the court.' Pierson v. State, 188 Ind. 239, 123 N. E. 118, 120. Some limit the cross examination to the showing of a conviction 'of a felony, but not that he has been indicted, only.' People v. Newman, 261 Ill. 11, 103 N. E. 589, 590. The Arkansas courts say: 'A witness

cannot be interrogated for purposes of impeachment by asking him about indictments or mere accusations.' Diffie v. State, 165 Ark. 613, 265 S. W. 72, 74. The New York courts are to the same effect. Their reasoning being: 'An indictment is a mere accusation, and raises no presumption of guilt. It is purely hearsay, for it is the conclusion or opinion of a body of men based on ex parte evidence' People v. Morrison, 195 N. Y. 116, 88 N. E. 21, 22, 133 Am. St. Rep. 780, 16 Ann. Cas. 871. After reviewing the above cited cases and others we have concluded that the fair rule to be applied is, that when a defendant takes the stand in his own behalf, he may not be cross examined about pending indictments against himself, because of the reasons above quoted from the New York opinions which we adopt.''

In the Brooks case supra, the defendant was indicted for carrying a pistol and on cross-examination he was asked by the attorney general '' 'if he was not the same Goldie Brooks, who was defendant in an indictment against Goldie Brooks, pending, of assault with intent to commit murder in the first degree','' to which he replied in the affirmative.

In the Brooks case this question was held to be erroneous. Of course, the Brooks case is distinguishable from the present case due to the fact that in the present case the defendant was indicted for an offense involving moral turpitude.

■ We now hold that the questions asked and answered in the present case were prejudicial and it was reversible error to allow this testimony to be admitted.

■ Notwithstanding the expressions made in the Zanone case, supra, we have come to the conclusion that it is not fair to the defendant for the prosecution, on

cross examination, to go far afield and ask the defendant if he has been accused, charged or indicted for some particular offense in the past. We think the limit of inquiry should be, in such cases, where the defendant was convicted of the offense involving moral turpitude.

It results that the judgment of the lower court must be reversed and the case remanded for a new trial.

NEIL, Chief Justice (concurring).

I have heretofore indicated my concurrence in the majority opinion as prepared for the Court by Mr. Justice PREWITT. However, I feel that the "Zanone case" should be clarified on the point made in the instant case, and should not be otherwise disturbed.

Mr. Justice PREWITT has quoted at length from the opinion in *Zanone* v. *State,* which took a rather wide range in dealing generally with questions deemed proper as well as improper on cross-examination. Much of the opinion by Special Justice Allen in the Zanone case is irrelevant to the problem posed in the case at bar.

I have carefully re-read and considered *Brooks* v. *State,* 187 Tenn. 67, 213 S. W. (2d) 7 (opinion by Mr. Justice Burnett), wherein the Court made it plain to one and all that an accused may not be asked about prior indictments and accusations involving other crimes. There is this further distinction, or clarification, which should be made, that is the right of the State to prove other crimes by way of cross-examination of the defendant. As a general rule the State may not prove the commission of other separate and distinct offenses.

Now the State should not be allowed to inquire of the accused of other crimes for which the defendant is to be tried. If he is guilty of such a crime, involving moral turpitude, the record of conviction is the best evidence.

The inquiry cannot be made competent by asking the defendant, "Are you not guilty of this crime?" He is not only presumed to be innocent, but the accused is being required to give evidence against himself. In other words, he is being arraigned on an indictment and required to plead to it before being brought to trial for the offense.

I feel that it is the duty of the trial judge to limit the cross-examination with reference to "other crimes" to those where the accused has been convicted of acts involving moral turpitude. It is a useless consumption of time to permit the cross-examination of the defendant, or any witness, regarding his guilt of trivial offenses.

Now as I understand from reading the opinion in the Brooks case, *Zanone* v. *State* is not overruled in its entirety. But cross-examination must be confined to crimes (1) where a defendant, or the witness, has been convicted, and which admittedly involves moral turpitude; and (2) his character wherein he has committed offenses contrary to accepted standards of decency and morality, but which may not necessarily be subject to criminal prosecution. The State, of course, is bound by his answer in the sense that it cannot prove by way of rebuttal that he was guilty of the specific wrongs and offenses about which he had been asked. But the State may prove his general bad character by witnesses who are qualified to testify about it.

There are cases in which the State is privileged to prove separate and distinct crimes, as in *Wrather* v. *State*, 179 Tenn. 666, on page 675, 169 S. W. (2d) 854, on page 857, (note opinion of Chambliss, Justice.). The exception to the general rule excluding proof of independent crimes is the following statement in the opinion: "Among the exceptions recognized to this general rule are when the evidence is introduced to prove identity,

knowledge as reflecting an intent, plan or system, a course of conduct, or, of course, when part of the *res gestae*." See also authorities cited in the opinion, 179 Tenn. on page 678, 169 S. W. (2d) on page 858, as follows:

"In the annotation in 3 A. L. R. at page 784, other cases are cited, among them *Baxter* v. *State*, 91 Ohio St. 167, 110 N. E. 456, 458, holding that 'vague and uncertain evidence' of the commission of a previous offense 'should never be admitted under any pretense whatever.' "

From the foregoing it shows beyond cavil the soundness of the rule excluding any inquiry on cross-examination regarding the commission of other similar crimes. The foregoing is my view of the question involved as well as my reason for concurring in the opinion of Mr. Justice Prewitt.